UNITED STATES of America,
Plaintiff,

v.

Robert R. RAYMOND, individually and d/b/a Morningstar Consultants, and Robert G. Bernhoft, individually and d/b/a Morningstar Consultants, Defendants.

No. 97–C–207.

United States District Court,
E.D. Wisconsin.

July 27, 1999.

Robert R. Raymond, Grafton, WI, pro se.

Robert G. Bernhoft, Richfield, WI, pro se.

## ORDER ADOPTING JUNE 17, 1999, RECOMMENDATION IN ITS EN-TIRETY AND DISMISSING CASE WITH PREJUDICE

CLEVERT, District Judge.

On June 17, 1999, Magistrate Judge William Callahan issued a recommendation which advised this court to grant plaintiff's motion for summary judgment as well as the plaintiff's petition for permanent injunctive relief against the defendants. The parties were advised that any objection to the recommendation must be filed with the Clerk of Court within ten days of service. Fed.R.Civ.P. 72; Local Rule 13.03 (E.D.Wis.). This court subsequently extended the time for the defendant to either object to or appeal the recommendation until July 26, 1999. Defendants have failed to file a timely objection to or appeal of the recommendation. A district court is not required to review a magistrate judge's factual or legal conclusions when neither party objects to those findings. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 472–73, 88 L.Ed.2d 435 (1985). Hence, the magistrate judge's recommendation will be adopted in its entirety.

Now, therefore,

IT IS ORDERED that Magistrate Judge Callahan's recommendation dated June 17, 1999 (doc. # 347), is adopted in its entirety.

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment (doc. # 251) is granted.

IT IS FURTHER ORDERED that plaintiff's petition for permanent injunctive relief against the defendants is granted.

IT IS FURTHER ORDERED that this case is dismissed with prejudice.

## ORDER AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, PLAIN-TIFF'S MOTION TO STRIKE DE-FENDANTS' DECLARATIONS, PLAINTIFF'S MOTION TO EX-CEED PAGE LIMITATION, AND DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S REPLY BRIEF

CALLAHAN, United States Magistrate Judge.

### I. BACKGROUND

The United States of America commenced this action against Robert R. Raymond ("Raymond") and Robert G. Bernhoft ("Bernhoft") on March 3, 1997, to permanently enjoin them from: (1) organizing or selling the "De–Taxing America Program", (hereinafter sometimes referred to as "the Program",) arguing that such program is an abusive tax shelter within the meaning of Section 6700 of the Internal Revenue Code of 1986 (26 U.S.C.), and (2) engaging in other conduct that substantially interferes with the proper administration of the internal revenue laws. The United States proceeds under Section 7408 of the Internal Revenue Code, which authorizes the district courts to enjoin persons from selling abusive tax shelters or other abusive tax avoidance schemes. It also proceeds under Section 7402(a) of the Internal Revenue Code, which gives the

district court jurisdiction to issue injunctions " necessary or appropriate for the enforcement of the internal revenue laws." Under that section, the United States argues that a district court may enjoin activities that interfere with the enforcement of those laws.

According to the United States, the defendants, Raymond and Bernhoft, engaged in conduct subject to penalty under Section 6700 of the Internal Revenue Code by promoting and selling the "De–Taxing America Program," a plan or arrangement which provided instructions for avoiding taxes by illegal means. The plaintiff maintains that the defendants furnished false statements with respect to the tax benefits available to purchasers of the "De–Taxing America Program," and knew or had reason to know that those statements were false. Moreover, the United States argues that the defendants are likely to continue conduct that is violative of Section 6700, and injunctive relief is appropriate to prevent recurrence of such conduct.

According to the plaintiff, Raymond and Bernhoft have engaged in numerous activities that interfere with the enforcement of the internal revenue laws. Specifically, through their promotion and sale of the "De–Taxing America Program", the defendants have provided false and fraudulent tax advice, advised purchasers of the "De–Taxing America Program" how to file false withholding forms and tax refund claims, and have instructed individuals on ways to engage in abusive conduct against IRS personnel, which conduct is calculated to interfere with the enforcement of the tax laws. The plaintiff maintains that the defendants' activities threaten substantial irreparable harm to the Government through the loss of revenue and interference with the proper administration of the tax laws. Thus, the plaintiff seeks injunctive relief against the defendants.

In arguing against the plaintiff's motion for summary judgment, the defendants set forth essentially four arguments: (1) that certain government actors were not proper delegates of the Secretary of the Treasury for purposes of authorizing, bringing, and maintaining this civil action against them; (2) that material facts are in dispute concerning whether the information referred to in this case as the "De–Taxing America Program" constitutes an abusive tax shelter within the meaning of 26 U.S.C. §§ 6700 and 7408; (3) that material facts are in dispute concerning whether the defendants made false statements as to the allowance of any tax deduction that would have affected the decision of a reasonable prudent investor to purchase and interest or share in the "De–Taxing America Program"; and (4) that material facts are in dispute concerning whether the injunction is necessary and appropriate to prevent the recurrence of the conduct.

The plaintiff's motion is now fully briefed and ready for resolution.[1] Because not all the parties have consented to magistrate judge jurisdiction, this court's jurisdiction is limited. See 28 U.S.C. § 636(b)(1).

For the reasons which follow, I am persuaded, and therefore recommend, that the plaintiff's motion for summary judgment be granted and that an injunction be issued.

---

1. The plaintiff's reply brief is 34 pages long and, therefore, exceeds the page limitation of Local Rule 6.01(c). Over one month after it was filed, the defendants filed a motion to strike the reply brief because of its length. On the heels of the defendants' motion, the plaintiff filed a motion for leave to exceed the page limitation of Local Rule 6.01(c), nunc pro tunc.

This case has been hard fought. Numerous motions and discovery disputes have peppered its progress. Indeed, the file now takes up several filing cabinet drawers. But, it is time to bring it to a close. And, in order to afford the plaintiff an opportunity to address the defendants' multi-faceted attack of the plaintiffs' claim, I believe it should be allowed to have the court consider its reply brief. Accordingly, the plaintiffs' motion for leave to exceed the page limitations of Local Rule 6.01(c) nunc pro tunc is GRANTED and the defendants' motion to strike the plaintiffs' reply brief is DENIED.

## II. PLAINTIFF'S MOTION TO STRIKE

Before even addressing the substance of the plaintiff's motion for summary judgment, it is necessary to address the plaintiff's motion to strike the defendants' declarations. In its motion, the plaintiff seeks an order striking: (1) paragraphs 14 through 24, inclusive, of the Third Declaration of Bernhoft, and (2) paragraphs of 14 through 24, inclusive, of the Fourth Declaration of Raymond. In support of its motion, the plaintiff argues that, at their respective depositions, each of the defendants declined to answer certain questions propounded by plaintiff's counsel based on their invocation of the Fifth Amendment privilege against self-information. Because the United States was deprived of discovery at the defendants' depositions, the defendants should be precluded from offering the testimony contained in the above-referenced paragraphs of the defendants' respective declarations. Moreover, according to the United States, the testimony set forth in the above-referenced paragraphs is "inconsistent with the rationale underlying their invocation of the Fifth Amendment privilege at their depositions in this case, and may not be used to defeat the Government's summary judgment motion." (Plaintiff's Motion to Strike, paragraph 7).

The defendants acknowledge that they selectively declined to answer certain questions at their respective depositions, based on their Fifth Amendment privilege. Nevertheless, they argue that this court should not strike the targeted paragraphs of their respective declarations. This is because:

(1) defendants' selective Fifth Amendment refusal to answer certain questions at their respective depositions was made in good faith, and subsequently waived and withdrawn in good faith; (2) plaintiff is not prejudiced by defendants' waiver and timely withdrawal of their Fifth Amendment assertions; (3) defendants must be permitted to oppose plaintiff's motion for summary judgment with other evidence bearing on subject matter plaintiff never queried during depositions or discovery or to which queries defendants fully testified; and (4) the legitimate ends of justice and truthful resolution of this controversy are furthered by denying plaintiff's motion to strike defendants' declarations.

(Defendants' Brief In Opposition To Plaintiff's Motion To Strike, page 1).

According to the plaintiff, at each of the defendant's respective depositions, which were conducted on March 10 and March 12, 1998, they consistently declined to provide any information concerning their roles in the organization and sales of the "De-Taxing America Program" by repeatedly invoking the Fifth Amendment privilege against self incrimination. Now, however, they have each submitted declarations in opposition to the plaintiff's motion for summary judgment setting forth information that they previously declined to give during the course of their depositions on the ground that such information would incriminate them. Citing a line of cases, the holdings of which are fairly represented by the court's holding in *In re Edmond*, 934 F.2d 1304 (4th Cir.1991), the plaintiff presents that "[a]lthough compelled self-incrimination is forbidden by the Fifth Amendment, the federal courts have not hesitated to forbid parties from asserting the Fifth Amendment privilege against discovery and then attempting to convert it to a sword by testifying at trial or submitting a self-serving affidavit in an effort to defeat a properly supported motion for summary judgment."(Plaintiff's Memorandum of Law, p.8). To be sure, the courts have so acted. But, they have so acted when they were persuaded that the party whose conduct was being examined had used the invocation of the privilege to manipulate the discovery process. In other words, courts do not take kindly to, for instance, a party's "selectively asserting his Fifth Amendment privilege,[and thereby attempting] to insure that his unquestioned, unverified affidavit would be the only version [of the

facts]...[T]he Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support [or oppose] a motion for summary judgment." *In re Edmond*, 934 F.2d at 1308. After all, the Fifth Amendment is "not a 'positive invitation to mutilate the truth a party offers to tell.'" *Lawson v. Murray*, 837 F.2d 653, 656 (4th Cir.1988).

But, I am not persuaded that a party should, under all circumstances, be precluded from offering an affidavit in support of, or in opposition to, a motion for summary judgment just because he refused to answer deposition questions on the same subject matter based on his Fifth Amendment privilege. Instead, "[a] trial court must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment. Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." *Securities and Exchange Commission v. Nash*, 25 F.3d 187, 192 (3rd Cir. 1994).

That said, it now becomes necessary for me to examine the case at hand and decide whether, under all the circumstances, precluding the defendants from offering declarations (or, more precisely certain portions of declarations) in opposition to the plaintiff's motion for summary judgment is an appropriate measure to take in light of the defendants' admitted invocation of the Fifth Amendment in refusing to answer certain questions at their respective depositions.

According to the defendants, who are proceeding pro se, their refusal to answer certain questions at their respective depositions was made in good faith, based on a demonstrably reasonable fear of criminal prosecution. Specifically, according to Bernhoft, prior to his March 10, 1998 deposition, he offered to testify fully to any and all questions relating to the De–Taxing America Program if the United States would agree to grant him some acceptable form of immunity; this offer, according to Bernhoft, was rejected By U.S. Department of Justice Tax Division Senior Trial Attorney Robert D. Metcalfe, III. (Fourth Declaration of Bernhoft, paragraph 8). Similarly, based on a series of events more fully set out in his Sixth Declaration, defendant Raymond "believe[d] that any information gained by the Department of Justice in our civil case could be used in a criminal case. Based on my previous experiences with the IRS I believe[d] that they were predisposed to filing a criminal action against me."

Apparently, Bernhoft's and Raymond's fears of possible criminal prosecution were well founded. In December, 1998, Bernhoft received a response from the IRS national office to a FOIA request served on the IRS by Raymond and him. The information obtained through such request revealed that at least from December 19, 1995 to November 13, 1996, Morningstar Consultants had been the subject of a criminal investigation into possible violations of the federal mail and wire fraud statutes, stemming from its alleged sales of "tax protester packages which contain fraudulent claims concerning tax filing requirements."(Fourth Declaration of Bernhoft, Exhibit B). Indeed, in that same response is found a "Memorandum of Interview or Activity" which indicates that on April 25, 1996, Assistant United States Attorney Francis D. Schmitz "declined to pursue criminal prosecution at this time of MORNINGSTAR CONSULTANTS, as the scheme has been identified early enough to stop financial losses to the government. He felt that an undercover operation could reveal a larger criminal fraud scheme. The known activity appears to constitute 'freedom of speech' on the part of protest groups. At this time, the case lacks prosecutive merit."(emphasis provided).

What the foregoing demonstrates to me is that the defendants' invocation of the Fifth Amendment during the course of

their respective depositions was not done for the purpose of manipulating the discovery process. It was done, instead, because they had reasonable cause to believe that the government was not only looking into their activities in connection with Morningstar Consultants for purposes of this lawsuit, but could (and perhaps would) use whatever information was gathered in putting together a criminal prosecution against them.

To be sure, the plaintiff in this case may have preferred to have the defendants' full deposition testimony rather than the somewhat limited testimony that it actually did receive. But, I cannot say that the plaintiff was substantially prejudiced by the defendants' invocation of their Fifth Amendment rights. After all, the plaintiff was able to take the depositions of numerous individuals who claim to have had contact with the defendants concerning the De–Taxing America Program. Indeed, it is the depositions of those individuals, together with numerous bank records (as well as, of course, the De–Taxing America Program itself) that form the heart of the plaintiff's motion for summary judgment. In other words, the plaintiff has "been able to thoroughly prepare its case and was not solely dependent on the defendant[s] for pertinent information." *Graystone Nash*, 25 F.3d at 192. Moreover, it is hard to imagine that the plaintiff would have obtained from the defendants at their depositions any more admissions than the defendants have now made in their declarations. And, in any event, the fact that the defendants have now submitted declarations does not stand in the way of the court's still drawing an adverse inference from their previous refusals to answer certain questions. "Adverse inferences are based upon the logic that '[s]ilence is often evidence of the most persuasive character.'" *Daniels v. Pipefitters' Assoc. Local Union No. 597*, 983 F.2d 800, 802 (7th Cir.1993).

In conclusion, I am not persuaded that the defendants' declarations, or any portions thereof, should be stricken based on the defendants' having previously invoked their Fifth Amendment rights at their re-

spective depositions. Their declarations will be considered by me in my consideration of the plaintiff's motion for summary judgment. Thus, the plaintiff's motion to strike the defendants' declarations is DENIED.

### III. FACTS

In support of its motion for summary judgment the plaintiff, in accordance with Local Rule 6.05 (E.D.Wis.), filed 71 proposed findings of fact. In their responsive materials the defendants filed responses to the plaintiff's proposed findings of fact, in accordance with Local Rule 6.05(b). Many of the defendants' responses, however, do not delineate particular proposed findings that are in dispute. Rather, they merely challenge the veracity of Revenue Agent Jeffrey Palmer of the Internal Revenue Service. For instance, in a number of their responses to the plaintiff's proposed findings the defendants state:

Defendants dispute this factual assertion to the extent it purports to convey the factual assertions of Fictitious IRS Revenue Agent Jeffrey Palmer (Palmer). Palmer's credibility is sufficiently in issue such that any of his assertions are properly excluded from supporting plaintiff's motion for summary judgment. Further, Palmer's declarations are sworn to under a fake name, or "registered pseudonym," and such declarations are not permitted by Fed. R.Civ.P. 56 in support of motions for summary judgment.

■ This is insufficient to raise a genuine issue of material fact such as to preclude summary judgment, assuming of course that the plaintiff otherwise demonstrates entitlement to summary judgment. This is because such conclusory allegations are just that, i.e. conclusory allegations. They fail to clearly delineate only those findings to which it is asserted that a genuine issue of material fact exists, referring to the particular contested finding and citing evidentiary materials which support the claim that a dispute exists. In decid-

ing a motion for summary judgment, the court will conclude that there is no genuine issue as to any proposed finding of fact to which there is no proper response. See, Local Rule 6.05(b)(1).

▆ Additionally, the defendants raise, in their responses, a claim that certain bank records which are referenced in the plaintiff's proposed findings and which support certain of those findings were "unlawfully obtained, and are therefore properly excluded from consideration in support of plaintiff's motion for summary judgment". Once again, however, this does not serve to raise a genuine issue of material fact. How the United States obtained the particular bank records in question is irrelevant for purposes of deciding whether there is a genuine issue of material fact as to what those records may demonstrate.

Finally, it is important to keep in mind that neither "the mere existence of some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), nor the demonstration of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), will sufficiently demonstrate a genuine issue of material fact. Moreover, it is only a genuine issue of material fact that will stand in the way a of a court's granting a properly supported motion for summary judgment.

All that said, a review of the parties' proposed findings of fact and responses thereto show the following to be the undisputed material facts in this case. Additional facts relevant to this court's recommendation may be found in the body of the recommendation.

## A. The Internal Revenue Service Investigation Into The Sale Of The "De-Taxing America Program"

1. Revenue Agent Jeffrey Palmer of the Internal Revenue Service, prior to the filing of the complaint in the present civil action on March 3, 1997, conducted an investigation into the sale of the "De-Taxing America" program by the defendants, Robert R. Raymond and Robert G. Bernhoft. Declaration of Jeffrey Palmer (hereinafter, "Palmer Decl."), ¶¶ 5-23."

2. Based upon information provided to him as the Illegal Tax Protestor Coordinator, Revenue Agent Palmer commenced an investigation into the sale of the "De-Taxing America" package by Robert R. Raymond and Robert G. Bernhoft through an entity known as "Morningstar Consultants" on June 24, 1996. Palmer Decl., ¶ 15. It is possible, however that his civil investigation of the defendants as early as August of 1995.

3. Revenue Agent Palmer learned through a telephone call he placed to Lakeshore Newspapers, Inc. that Morningstar Consultants ran weekly newspaper advertisements in the Ozaukee County News Graphic between January 18, 1996 and June 6, 1996 which advertised, under the caption "Just Say No," that the payment of federal income and social security taxes is voluntary. This advertisement further stated that "[t]he Internal Revenue Service has no Statutory Authority to:

Compel you to File a Tax Return
Require withholding from your paycheck
Levy or Lien your property
Audit your Books & Records"

Palmer Decl., ¶ 6; Third Declaration of Jeffrey Palmer ("Third Palmer Decl."), ¶ 14.

4. Readers of this advertisement were instructed to contact Morningstar Consultants, P.O. Box 227, Port Washington, WI 53074 for further information. A true and correct copy of this advertisement, as it appeared in the Ozaukee County News Graphic between January 18, 1996 and June 6, 1996, is attached to the Declaration of Jeffrey Palmer as Exhibit 1. Palmer Decl., ¶ 6.

5. Copies of the Individual History Detail for the advertisement "Just Say No" (which Revenue Agent Palmer obtained from the Lakeshore Newspapers,

Inc./Ozaukee County News Graphic), and a copy of the check drawn on the account of the "Bounty Trust" at the Ozaukee Bank on January 16, 1996 in favor of Lakeshore Newspapers in the amount of $99.20 (which Revenue Agent Palmer obtained from Lakeshore Newspapers, Inc.), are attached to the Third Declaration of Jeffrey Palmer as Exhibit 6. In the memorandum section of the January 16, 1996 check described above, the words "Morningstar Ad" appear. Third Palmer Decl., ¶ 14.

6. Attached to the Declaration of Revenue Agent Palmer as Exhibit 2 is a true and correct copy of "The Great Snow Job" by Barrie Konicov, which he obtained during the course of his investigation. Included in "The Great Snow Job" is a copy of promotional literature which identifies Robert R. Raymond and Robert G. Bernhoft as being associated with Morningstar Consultants. Palmer Decl., ¶ 17.

7. Attached to the Declaration of Revenue Agent Palmer as Exhibit 3 is a copy of "De–Taxing America Information" which was downloaded from the Barrie Konicov Internet Web Site by the Internal Revenue Service on or about July 17, 1996. Included in the material advertised on this page is "The Great Snow Job," which is advertised as being for sale at the price of $14.95. Palmer Decl., ¶ 8.

8. During his investigation, and as a result of his interviews with purchasers of the "De–Taxing America" package, Revenue Agent Palmer secured a copy of the "De–Taxing America" package as well as information concerning the manner in which it is marketed and sold to the public at large. Palmer Decl., ¶ 9.

9. Attached to the Third Declaration of Jeffrey Palmer as Exhibit 5 is a true and correct copy of the "De–Taxing America Program" materials, Volumes I, II and III, which were provided to the Internal Revenue Service by Mary L. Rosado. A redacted copy of Volume I of the "De–Taxing America Program" materials furnished by Mary L. Rosado was attached to the previously-filed Declaration of Jeffrey Palmer as Exhibit 4. Redacted copies of Volumes I and II of the "De–Taxing America Program" materials furnished by Mary L. Rosado are attached as Exhibit F to the transcript of the deposition taken of Robert M. Burmesch in this case, which is attached to the Seventh Declaration of Teresa Dondlinger Trissell. Third Palmer Decl., ¶ 7.

10. As a result of an administrative summons which was issued by Revenue Agent Palmer to the Ozaukee Bank on August 1, 1996, for books, records, papers and other data relating to Robert R. Raymond, Patricia J. Raymond, Morningstar Consultants, De–Taxing America, Raymond Contractors, Bounty Trust and MSM Trust, Revenue Agent Palmer learned that proceeds from the sale of the "De–Taxing America" package were deposited into a checking account at the Ozaukee Bank in Cedarburg, Wisconsin, which was held in the name of the "Bounty Trust." The checking account for the Bounty Trust was opened on October 4, 1995. This information was gained through an analysis of the items deposited in the Bounty Trust checking account (account # 22677 1), copies of which Revenue Agent Palmer obtained through the IRS summons issued to the Ozaukee Bank. Palmer Decl., TT13 and 14; Third Palmer Decl., ¶¶ 15 and 16.

11. The records maintained by the Ozaukee Bank with respect to the Bounty Trust checking account (# 226771), including the signature card for account # 226771 and periodic account statements for account # 226771, indicate that Robert G. Bernhoft is a trustee of the Bounty Trust, and that Robert Raymond is a managing director of the Bounty Trust. Palmer Decl., T14; Third Palmer Decl., TT8, 16, 18; Exhibits 13T and 13Y to the deposition of Robert G. Bernhoft (Volume 1) under the Second Declaration of Teresa Dondlinger Trissell.

12. Revenue Agent Palmer's analysis of the bank statements and deposits to the Bounty Trust checking account at the Ozaukee Bank for the period between Oc-

tober 4, 1995 (the date the checking account for the "Bounty Trust" was opened) and July 18, 1996, together with oral testimony provided to him by purchasers of the "De–Taxing America" package, document total deposits of $34,578 from sales of the "De–Taxing America" package by Robert R. Raymond, individually and/or doing business as Morningstar Consultants, and Robert G. Bernhoft, individually and/or doing business as Morningstar Consultants. Palmer Decl., ¶ 5; Third Palmer Decl., ¶ 16.

13. From bank records obtained by Revenue Agent Palmer from the Ozaukee Bank in Cedarburg, Wisconsin, the first documented sales of the De–Taxing America Program by Robert R.Raymond and/or Robert G. Bernhoft occurred in October of 1995. Third Palmer Decl., ¶ 15.

14. One of the first purchasers of the De–Taxing America Program was Donald E. Payne, who testified that he purchased the De–Taxing America Program materials from Robert R. Raymond and Robert G. Bernhoft. Deposition of Donald E. Payne (under Twenty–Third Declaration of Teresa Dondlinger Trissell), Tr. 9:17 to 11:9; Third Palmer Decl., ¶ 16.

15. Attached to the transcript of the deposition of Donald E. Payne (under the Twenty–Third Declaration of Teresa Dondlinger Trissell) as Exhibit 15–B is a copy of the check written by Mr. Payne to the Bounty Trust in the amount of $1,000 on October 27, 1995. Also attached to the deposition transcript as Exhibit 15–B was a copy of a deposit ticket reflecting a $ 1,000 deposit to the account of the Bounty Trust at the Ozaukee Bank on October 31, 1995. Copies of the checks signed by Mr. Payne, dated January 6, 1996 and March 2, 1996, and made payable to the Bounty Trust in the amounts of $395 and $200, respectively, and the deposit tickets for the account of the Bounty Trust at the Ozaukee Bank, dated January 8, 1996 and March 4, 1996, in the amounts of $395 and $200, respectively, are attached to the transcript of the deposition of Mr. Payne as Exhibits 15–C and 15–D. Deposition of Donald E. Payne, Tr. 12:7 to 15:25; Third Palmer Decl., ¶¶ 16 and 17.

16. Revenue Agent Palmer determined, as a result of his investigation, that fifty-five (55) individuals (including the spouses of purchasers) purchased the De–Taxing America Program from Robert R. Raymond and/or Robert G. Bernhoft doing business as "Morningstar Consultants." This determination was based upon: (1) Revenue Agent Palmer's examination of the checks written by the purchasers of the De–Taxing America Program to the "Bounty Trust," "Morningstar Consultants" "Robert G. (or "Bob") Bernhoft" or "Bob Raymond" and deposited to the account of the Bounty Trust (account # 226771) at the Ozaukee Bank between October 4, 1995 and July 18, 1996 (words such as "De–Tax," "D.T.," "De–Taxing" or "De–Tax Information" were frequently written in the memo section of the personal check written by the purchaser); (2) Revenue Agent Palmer's examination of correspondence and written materials mailed to the Internal Revenue Service which bore the name of the purchaser or purchasers, and which was identical or substantially similar to the correspondence and written materials contained in Volumes I and II of the copy of the "De–Taxing America Program" obtained from Mary L. Rosado (as described in paragraph 9, above); and (3) the oral statements or deposition testimony of purchasers of the De–Taxing America Program, including (but not limited to) Rita Greil Behr, Robert M. Bunnesch, Thomas C. Casper, Dane E. Charles, James F. Ciesielski, John P. Clark, Lynn M. Dable, Gary Neil Dailey, Anthony E. Deiss, Charles E. Ergen, Edward Frami, Gerard N. Haas, James Hause, Thomas F. Jelinek, Karen N. Leonard, Barry D. Moder, Elizabeth A. Mueller, Donald E. Payne and Bruce T. Peacock. Third Palmer Decl., ¶¶ 5 and 19.

17. Revenue Agent Palmer's examination of "De–Taxing America" correspondence and forms received by the Internal Revenue Service, as well as items deposit-

ed to the Bounty Trust checking account at the Ozaukee Bank (as described above), show that Robert R. Raymond and/or Robert G. Bernhoft, individually and/or doing business as Morningstar Consultants, have sold the "De–Taxing America" package to individual taxpayers residing in the States of Wisconsin, Illinois, Nevada and Nebraska. Palmer Decl., ¶ 16.

18. Revenue Agent Palmer's investigation into the De–Taxing America Program, as described above, indicated that individual purchasers of the Program paid between $445 and approximately $2,600 to Robert R. Raymond and/or Robert G. Bernhoft for their copies of the Program materials. These figures were taken from the copies of the checks that were made payable to the "Bounty Trust," "Morningstar Consultants," "Robert G. (or "Bob") Bernhoft" or "Bob Raymond" and deposited to the account of the Bounty Trust (account # 226771) at the Ozaukee Bank between October 4, 1995 and July 18, 1996. Third Palmer Decl., ¶ 25.

**B. Significant features of the De–Taxing of America Program**

19. The De–Taxing America Program materials, including Volumes I, II and III which were provided to the Internal Revenue Service by Mary L. Rosado (Exhibit 5 to the Third Declaration of Jeffrey Palmer), and the copies of De–Taxing America Program materials which are attached to the transcripts of the depositions of Robert R. Raymond, Robert G. Bernhoft, Rita Greil Behr, Robert M. Burmesch, Thomas C. Casper, Dane E. Charles, James F. Ciesielski, John P. Clark, Lynn M. Dable, Gary Neil Dailey, Anthony E. Deiss, Charles E. Ergen, Edward Frami, Gerard N. Haas, James Hause, Thomas F. Jelinek, Karen N. Leonard, Barry D. Moder, Elizabeth A. Mueller, Donald E. Payne, Bruce T. Peacock and Daniel J. Treuden, instruct the purchasers of the De–Taxing America Program to submit correspondence and other written materials to the Internal Revenue Service, the U.S. Department of Justice, the State Department of Revenue and the Social Security Admin-

istration. Third Palmer Decl., ¶ 22 and Exhibit 5 thereto; Second through Twenty–Fifth Declaration of Teresa Dondlinger Trissell and the Exhibits attached thereto.

20. Based upon his review of the De–Taxing America Program materials described above, his investigation into the "De–Taxing America Program," and his prior years of experience as an Internal Revenue Service Revenue Agent, Revenue Agent Palmer observed that the Program preys on individuals who believe the representations made in Volumes I, II and III of the De–Taxing America Program that an individual who is otherwise obligated to file a federal income tax return and pay federal income and social security taxes can legally cease filing returns and paying taxes by following the advice and utilizing the materials contained in the De–Taxing America Program. Third Palmer Decl., ¶ 23.

21. The De–Taxing America Program portrays itself as being an easy-to-follow, step-by-step program which converts money formerly paid to the United States as federal income and social security taxes into discretionary income. Volume III of the De–Taxing America Program contains copies of reported federal court decisions which supposedly support the instructions and erroneous statements regarding the internal revenue laws contained in Volumes I and II of the Program. Third Palmer Decl., ¶ 24, and Exhibit 5 thereto.

22. Customers who purchased the De–Taxing America Program from Robert R. Raymond and/or Robert G. Bernhoft filled out a "Morningstar Consultants Client Questionnaire." Two examples of these Questionnaires are attached to the depositions of Rita Greil Behr (formerly known as Rita Greil) as Exhibit DDDDD (under the Sixth Declaration of Teresa Dondlinger Trissell) and Edward Frami as Exhibit 7–0 (under the Fifteenth Declaration of Teresa Dondlinger Trissell). Third Palmer Decl., ¶ 26.

23. The introductory paragraph of the Morningstar Consultants Client Question-

naire instructs the purchaser of the De–Taxing America Program to "[p]lease print or type your responses exactly as you wish them to appear on your personalized documents." These personalized documents subsequently appear as Documents in Volumes I and II of the De–Taxing America Program. For example, Exhibit EEEEE (attached to the transcript of the deposition of Rita Greil Behr under the Sixth Declaration of Teresa Dondlinger Trissell), entitled "Constructive Notice, Demand, and Statement," bears the same address as that shown on the Morningstar Consultants Client Questionnaire (Exhibit DDDDD). Third Palmer Decl., ¶ 26.

24. The "Instructions" contained in Volume I of the "De–Taxing America Program" instruct the purchaser to send numerous preprinted letters to various Government officials, including the Attorney General of the United States, the District Director of Internal Revenue and the Director of the Social Security Administration. The purchaser is also instructed to sign these letters before a notary public and to send them to the addressees by certified or registered mail. These letters, among other items, "assert that [the purchaser of the De–Taxing America Program is] not within the purview of either Title 26 or Title 27," "make a record that there is no law, code, regulation, or statute that requires you to file a 1040 return," and "demand[ ] proof of the proper delegations of authority and that the IRS prove its jurisdiction over you." The material which appears in quotations is taken from the "Instructions" found in Volume I of the De–Taxing America Program (attached to the Third Declaration of Jeffrey Palmer as Exhibit 5). Third Palmer Decl., ¶ 27, and Exhibit 5 thereto.

25. The De–Taxing America Program instructs purchasers whose employers withhold federal income and social security taxes from their paychecks to prepare and submit to their employers Employee's Withholding Allowance Certificates (Forms W–4) which falsely assert that the purchasers are exempt from the withholding requirements imposed by various pro-visions of the Internal Revenue Code. Third Palmer Decl., ¶ 28, and Exhibit 5 thereto.

26. Document 11 of Volume I of the De–Taxing America Program consists of a preprinted letter which is addressed to the "Director of Personnel." Several spaces are left for the insertion of the employer's name and address. Document 11 informs the purchaser's employer that Barrie Konicov, the "Founder and Director of De–Taxing America," is assisting the purchaser in "the process of *legally* removing him/herself from paying federal, state, and Social Security taxes." Included in the documentation which appears as Document 11 is a document entitled "Certificate of Exemption from Withholding in Lieu of W–4" which represents that "[n]o liability for income tax has knowingly been incurred by me under Subtitle A in the past year or in previous years." Third Palmer Decl., ¶ 28, and Exhibit 5 thereto.

27. The "De–Taxing America" package contains many false statements and promotes the use of various schemes to enable purchasers of the "De–Taxing America" package to evade the assessment and payment of federal income and social security taxes. Palmer Decl., ¶ 10.

28. The De–Taxing America Program encourages purchasers of the Program not to file federal income tax returns with the Internal Revenue Service by falsely stating that:

— wages and salaries earned by an individual taxpayer are not taxable;

— there is no legal requirement for an individual to file a tax return with the Internal Revenue Service;

— the filing of federal income tax returns and the payment of federal income taxes by individual taxpayers is completely voluntary and not mandatory; and—the Internal Revenue Code was never enacted into law.

Palmer Decl., ¶ 11; Third Palmer Decl., ¶ 35, and Exhibit 5 thereto.

29. The De–Taxing America Program, as marketed by Robert R. Raymond and/or Robert G. Bernhoft, also instructs

purchasers of the Program to file claims with the Internal Revenue Service for federal income taxes previously paid by the purchasers for the preceding three tax years. The instructions found in Volume I of the De–Taxing America Program (Exhibit 5 to the Third Declaration of Jeffrey Palmer) state, in pertinent part, that "Document 21, the 1040X Form, will allow you to request a federal income tax refund for any (or all) of the last three tax years for which taxes were paid and you *did* file a 1040 Form." Third Palmer Decl., ¶ 39, and Exhibit 5 thereto.

30. Appended to Document 21 (a blank Amended U.S. Individual Income Tax Return or Form 1040X) of the De–Taxing America Program materials are detailed instructions for completing an Amended U.S. Individual Income Tax Return where the "correct amount" of the income and deductions for the taxpayer are (according to the sample Form 1040X supplied with Document 21) all listed as "0." The amount of the overpayment of federal income tax which purchasers of the De–Taxing America Program are instructed to insert on line 18 of the amended federal income tax return (Form 1040X) is equal to the tax liability which they reported on their U.S. Individual Income Tax Return (Form 1040) which was filed with the Internal Revenue Service for one of the preceding three tax years. The "amount you owe," as reflected on line 20 of the amended federal income tax return (as completed by the purchasers of the Program) is always "0." Third Palmer Decl., ¶ 39.

31. Purchasers of the "De–Taxing America" package are also instructed to submit requests for information under the Freedom of Information Act (FOIA) to the Internal Revenue Service. Palmer Decl., ¶ 12.

**C. Consequences of the defendants' sales of the De–Taxing of America Program**

**1. *Filing false withholding certificates***

31. (sic) As noted above, the De–Taxing America Program instructs its purchasers whose employers withhold federal income taxes from their salary or wages to file Employee's Withholding Allowance Certificates with those employers to falsely claim that the purchasers are exempt from the withholding requirements of the federal employment tax laws. At least 12 individuals who purchased the De–Taxing America Program from Robert R. Raymond and/or Robert G. Bernhoft requested that their employers cease withholding federal income taxes from their wages. Third Palmer Decl., ¶¶ 28 and 29.

32. Examples of the Employee's Withholding Allowance Certificates (Forms W–4) described in the preceding paragraphs include the Form W–4 submitted by Robert M. Burmesch to his employer in December of 1995. A true and correct copy of this Form W–4 is attached as Exhibit H to the transcript of the deposition of Robert M. Burmesch (under the Seventh Declaration of Teresa Dondlinger Trissell). Exhibit G to the deposition of Robert M. Burmesch, entitled "Certificate of Exemption from Withholding in Lieu of W–4," is identical to the "Certificate of Exemption from Withholding in Lieu of W–4" described in paragraph 28 of the Third Declaration of Jeffrey Palmer, and paragraph 26, above. Third Palmer Decl., ¶ 30.

33. Other examples of purchasers of the De–Taxing America Program who submitted Employee's Withholding Allowance Certificates (Forms W–4) or "Certificates of Exemption from Withholding in Lieu of W–4" (as described in paragraph 28 of the Declaration of Jeffrey Palmer and paragraph 26, above) to their employers which incorrectly stated that they were "exempt" from the withholding requirements of the Internal Revenue Code include:

A. *Linda–K.–Clark* (the wife of John P. Clark) who submitted a Form W–4 on or about November 16, 1995 (Exhibit 18–1 to the transcript of the deposition of John P. Clark under the Tenth Declaration of Teresa Dondlinger Trissell);

B. *John W. Dable and Lynn M. Dable* who submitted "Certificates of Exemp-

tion from Withholding in Lieu of W–4" to their employers on or about February 5, 1996 and February 7, 1996, respectively (Exhibit HHHH to the transcript of the deposition of Lynn M. Dable under the Eleventh Declaration of Teresa Dondlinger Trissell);

C. *Gary N. Dailey* who submitted a "Certificate of Exemption from Withholding in Lieu of W–4" to his employer on or about January 3, 1996 (Exhibit CCC to the transcript of the deposition of Gary N. Dailey under the Twelfth Declaration of Teresa Dondlinger Trissell);

D. *Anthony E.* Deiss, who submitted a Form W–4 to his employer on or about August 14, 1995 (Exhibit ZZZZZ to the transcript of the deposition of Anthony E. Deiss under the Thirteenth Declaration of Teresa Dondlinger Trissell); and

E. *Daniel J. Trueden,* who submitted a "Certificate of Exemption from Withholding in Lieu of W–4" to his employer on or about October 30, 1995 (Exhibit I 1 -T to the transcript of the deposition of Daniel J. Treuden under the Twenty–Fifth Declaration of Teresa Dondlinger Trissell).

Third Palmer Decl., ¶ 31.

34. The filing of the Forms W–4 and "Certificates of Exemption from Withholding in Lieu of W–4" by purchasers of the De–Taxing America Program, as described above, required an employee of the Internal Revenue Service to contact the purchaser's employer and instruct the employer not to honor the Form W–4 or "Certificate of Exemption from Withholding in Lieu of W–4" which asserted that the purchaser was somehow exempt from the withholding requirements imposed by the Internal Revenue Code. Third Palmer Decl., ¶ 32.

35. As the Tax Protestor Coordinator for the Internal Revenue Service in Wisconsin, Revenue Agent Palmer contacted several of the employers of individuals who purchased the De–Taxing America Program from Robert R. Raymond and/or Robert G. Bernhoft and who submitted Forms W–4 to their employers which falsely or fraudulently claimed (in accordance with the instructions and documents contained in the De–Taxing America Program) that they were exempt from the requirements to have federal income taxes withheld from their wages or salaries, and notified those employers that they should continue to withhold federal income taxes from the wages or salaries of the purchasers of the De–Taxing America Program. Third Palmer Decl., ¶ 32.

36. Under Section 6682 of the Internal Revenue Code, a $500 civil penalty may be assessed against an individual who makes a statement under Section 3402 of the Internal Revenue Code (relating to income tax collected at the source) which results in a lesser amount of income tax actually deducted and withheld than is properly allowable under Section 3402 when there was no reasonable basis for the statement at the time it was made. Section 6682 civil penalties were assessed against a number of purchasers of the De–Taxing America Program who submitted Employee's Withholding Allowance Certificates (Forms W–4) to their employers which falsely claimed that the purchasers were exempt from the requirements to withhold federal income taxes from their wages or salaries. Third Palmer Decl., ¶ 33.

37. As a result of the filing of the "Certificates of Exemption from Withholding in Lieu of W–4" contained in the De–Taxing America Program, and the Forms W–4 which falsely asserted that purchasers of the De–Taxing America Program were exempt from the federal withholding requirements, the Internal Revenue Service was administratively burdened and required to utilize its employees to ensure that federal income taxes were properly withheld from the wages and salaries received by those purchasers. Third Palmer Decl., ¶ 34.

### 2. *Failure to file tax returns and pay taxes*

38. Records maintained by the Internal Revenue Service reflect that at least 20

individuals and/or their spouses who filed income tax returns for the 1994 taxable year and/or prior years, and who subsequently purchased the De–Taxing America Program, failed to file federal income tax returns with the Internal Revenue Service for the 1995, 1996 or 1997 taxable years. Third Palmer Decl., ¶ 36.

39. Based upon the income reported by some of these individuals (i.e., those who failed to file federal income tax returns for the 1995–1997 tax years) on the income tax returns which they had previously filed with the Internal Revenue Service, as well as income actually received by some of these individuals (as reported to the Internal Revenue Service) and Bureau of Labor statistics. Revenue Agent Palmer estimated that the United States has suffered a loss of federal income tax revenue in the amount of $691,731.00 as a result of the failure of certain purchasers of the De–Taxing America Program to file federal income tax returns with the Internal Revenue Service. Third Palmer Declaration, ¶ 36.

40. Revenue Agent Palmer's calculation of the federal income tax revenues lost by the United States takes into consideration the federal income taxes actually withheld and the estimated taxes paid to the Internal Revenue Service for the 1995, 1996 and 1997 taxable years, if any, with respect to the 20 individuals described in paragraph 36 of the Third Declaration of Jeffrey Palmer and paragraphs 38 and 39, above. Third Palmer Decl., ¶ 36.

41. The tax revenues lost by the United States as result of the failure of the 20 individuals and/or their spouses to file federal income tax returns and pay federal income taxes for the 1995–1997 tax years are further aggravated by the administrative expense incurred by the IRS in undertaking taxpayer delinquency investigations (TDIs) by attempting to contact the delinquent taxpayers and secure the unfiled federal income tax returns. Third Palmer Decl., ¶ 37.

42. The Internal Revenue Service has commenced fifteen (15) taxpayer delin-

quency investigations with respect to 11 individuals who purchased the De–Taxing America Program from Robert R. Raymond and/or Robert G. Bernhoft, or whose spouse purchased the De–Taxing America Program from Robert R. Raymond and/or Robert G. Bernhoft. Third Palmer Decl., ¶ 37.

43. If the federal income tax returns cannot be obtained voluntarily from the individual through the taxpayer delinquency investigations, the Internal Revenue Service is obliged to examine or audit the individual's federal income tax liabilities to determine whether an income tax deficiency exists unless circumstances warrant otherwise. Third Palmer Decl., ¶ 38.

44. After the audit or examination of the non-filer's federal income tax liability is completed, the Internal Revenue Service is then required to send the delinquent taxpayer a notice of deficiency as to his or her federal income tax liability if an audit deficiency is determined against the taxpayer. If an audit or income tax deficiency is subsequently assessed against the taxpayer, and the taxpayer refuses to voluntarily pay the assessed tax liability, the IRS is then obliged to undertake enforced collection action to collect the amount of the outstanding federal tax liabilities, or taxpayer delinquent accounts (TDAs). Third Palmer Decl., ¶ 38.

### 3. *Filing fraudulent tax refund claims*

45. The Internal Revenue Service has received, from purchasers of the "De–Taxing America" package, amended federal income tax returns (Forms 104OX) which request refunds of all or a portion of the federal income taxes paid by the taxpayer for taxable years prior to 1995. Palmer Decl., ¶ 22; Third Palmer Decl., ¶ 40.

46. Certain individuals who purchased the De–Taxing America Program from Robert R. Raymond and/or Robert G. Bernhoft filed amended federal income tax returns (Forms 104OX) with the Internal Revenue Service. Third Palmer Decl., ¶ 40.

47. Anthony E. Deiss (and his spouse, Lisa L. Deiss) filed an amended federal income tax return (Form 104OX) with the Internal Revenue Service for the 1992 taxable year which identified their income as "0," and which requested a refund of $1,744. A true and correct copy of this 1992 Form 104OX is attached to the transcript of the deposition of Anthony E. Deiss as Exhibit 6–K (under the Thirteenth Declaration of Teresa Dondlinger Trissell). Third Palmer Decl., ¶ 40.

48. On February 12, 1996, a Treasury check in the amount of $2,138.60 was issued to Mr. and Mrs. Deiss, representing the requested 1992 tax refund of $1,744 plus statutory interest. When the Internal Revenue Service subsequently notified Mr. and Mrs. Deiss that the refund of $2,138.60 for his 1992 federal income tax liability was erroneous, Mr. Deiss wrote "Acceptance Refused for Cause Without Dishonor" "UCC 3–501" across the notice of erroneous refund on May 29, 1996, and returned it to the Internal Revenue Service (as evidenced by Exhibit 6–F attached to the transcript of the deposition of Anthony E. Deiss under the Thirteenth Declaration of Teresa Dondlinger Trissell). Third Palmer Decl., ¶ 40.

Anthony and Lisa Deiss paid back the $2,138.60 they received via refund, with penalties and interest.(See June 26, 1997 Depo. of Anthony Deiss, 25:9–15 under Thirteenth Declaration of Teresa Dondlinger Trissell).

### 4. *Filing frivolous FOIA/Privacy Act requests*

49. Numerous requests for information were made by purchasers of the De–Taxing America Program utilizing pre-printed "Request[s] for Information under the Privacy Act and the Freedom of Information Act." Second Declaration of Fred G. Damaske ("Second Damaske Decl."), ¶¶ 1 and 6.

50. These "Request[s] for Information under the Privacy Act and the Freedom of Information Act," in numerous cases, were addressed to the Disclosure Officer, Internal Revenue Service–Milwaukee District, 310 W. Wisconsin, Milwaukee, WI 53203. Such requests for information under the FOIA were routinely forwarded by the Internal Revenue Service to the office of the Disclosure Officer, Fred G. Damaske, for response. Second Damaske Decl., ¶¶ 1 and 6.

51. Between August 7, 1995 and January 21, 1997, the defendant, Robert G. Bernhoft, made eighteen (18) requests for information under the Freedom of Information Act and/or the Privacy Act. Third Palmer Decl., ¶ 19.

52. In a "FOIA and Privacy Act Request for a 'Letter Ruling'" dated December 12, 1995 to the Assistant Commissioner of Internal Revenue in Washington, D.C., the defendant, Robert G. Bernhoft, and his spouse requested a "'letter ruling' with respect to defining our status for tax purposes prior to filing a tax return." More specifically, the defendant and his wife requested that they be provided with a letter ruling "that we are not ... 'taxpayers' as defined in 26 U.S.C.... 7701(a)(14)," and further requested that they be provided with a written statement in response to their question "What specific tax law or published regulation requires us to file a Form 1040?" Exhibit 14E to the transcript of the deposition of Robert G. Bernhoft (Volume 2) under the Third Declaration of Teresa Dondlinger Trissell; Third Palmer Decl., ¶ 19.

53. As a result of the dissemination of the De–Taxing America Program materials, the Internal Revenue Service was administratively burdened and required to devote substantial personnel resources to responding to the FOIA and/or Privacy Act requests made by purchasers of the Program. Second Damaske Decl., ¶ 7.

54. From 1995 through the date of this Declaration, the technical staff of the Disclosure Office (which works under the supervision of Fred G. Damaske) has been required to spend approximately 291.5 hours responding to over 124 FOIA and Privacy Act requests at a total cost of

$6,179.80 to the Internal Revenue Service, based upon the salaries of two disclosure specialists at $21.20 per hour. Second Damaske Decl., ¶ 7.

### 5. *Administrative burdens to IRS*

55. In addition to the tax revenues which the United States lost as a result of the De–Taxing America Program (either by way of the purchaser's refusal to file income tax returns and pay taxes, or through erroneous tax refunds made to purchasers who submitted false amended federal income tax returns), the Internal Revenue Service incurred costs in terms of the administrative resources devoted by the agency to resolving the problems created by the sales and uses of the De–Taxing America Program. Third Palmer Decl., ¶ 41.

56. As part of Revenue Agent Palmer's investigation into the organization and marketing of the De–Taxing America Program by Robert R. Raymond and/or Robert G. Bernhoft, he estimated that a total of 507 hours had been spent by various Internal Revenue Service personnel in performing functions such as:

(a) auditing the federal income tax liabilities of purchasers of the De–Taxing America Program;

(b) preparing substitutes for return (SFRs) for purchasers of the De–Taxing America Program who failed to file income tax returns with the Internal Revenue Service for the 1995–1997 taxable years;

(c) preparing, reviewing and issuing statutory notices of deficiency to purchasers of the De–Taxing America Program;

(d) responding to Forms W–4 filed by purchasers of the De–Taxing America Program who claimed that they were exempt from the federal withholding requirements, including proposing and assessing Section 6682 civil penalties;

(e) responding to Freedom of Information Act (FOIA) and Privacy Act requests sent to the Internal Revenue Service by purchasers of the De–Taxing America Program;

(f) issuing pre-filing notification and warning letters to purchasers of the De–Taxing America Program; and

(g) collecting delinquent federal income taxes and statutory additions to tax from purchasers of the De–Taxing America program. Third Palmer Decl., ¶ 41.

57. The 507 hours spent by Internal Revenue Service personnel in performing the above-described functions does not include the additional time spent by IRS personnel in performing similar functions with respect to the activities of purchasers of the De–Taxing America Program since January of 1997. Third Palmer Decl., ¶ 41.

### D. Actual uses made of the "De–Taxing America Program" by its purchasers

58. *Rita Greil Behr* (formerly Rita Greil) purchased the "De–Taxing America Program" through the defendant. Robert Raymond, by delivering to him a check made out to "Robert Raymond" in the amount of $1,000.00. Deposition of Rita Greil Behr ("Behr Dep."), Tr. 5:4–19; 10:7 to 11:3; 16:3 to 17:12, under the Sixth Declaration of Teresa Dondlinger Trissell, and Exhibit AAAAA thereto. At the request of Mr. Raymond, she filled out the "Morningstar Consultants Client Questionnaire" attached to her deposition as Exhibit DDDDD. Behr Dep., Tr. 21:4 to 22:23. Although she was born in Wisconsin, graduated from a high school located in Wisconsin, and had worked as a nurse anesthetist for the past 15 years, Ms. Behr signed and sent to the District Director of Internal Revenue in Milwaukee, Wisconsin a document entitled "Constructive Notice, Demand, and Statement" in which she stated that she had received legal advice that she was not liable for, or subject to, income taxes. Behr Dep., Tr. 7:14–21; 8:1–10; 15:1–20; 23:19–25; 24:24 to 26:3, and Exhibit EEEEE thereto. Ms. Behr also signed and mailed to the IRS other materials from the "De–Taxing America Program" which are marked as Exhibits

FFFFF through JJJJJ to her deposition. Behr Dep., Tr. 26:4 to 30:7.

59. *Robert M. Burmesch* is a steel worker in Saukville, Wisconsin who purchased the De–Taxing America Program materials for $1,500.00 through Robert Raymond, who was known by Mr. Burmesch (along with Robert G. Bernhoft) to be associated with Morningstar Consultants. Deposition of Robert M. Burmesch ("Burmesch Dep."), Tr. 6:19 to 7:11; 8:16 to 10:8; 17:21 to 18:8 under the Seventh Declaration of Teresa Dondlinger Trissell. Mr. Burmesch made out two checks (each for $500) to "Morningstar Consultants" for the De–Taxing America Program. Burmesch Dep., Tr. 21:7 to 22:14; 25:4–18; 26:6 to 27:20, and Exhibit F thereto. Utilizing the "Certificate of Exemption from Withholding in Lieu of W–4 Form" and an "Employee's Withholding Allowance Certificate" (Form W–4) which he obtained from the "De–Taxing America Program" materials, Mr. Burmesch attempted to have his employer, Charter Steel, stop withholding federal income taxes from his paychecks. Burmesch Dep., Tr. 32:24 to 34:23; 36:7–12, and Exhibits G and H thereto. Charter Steel initially honored Mr. Burmesch's claim that he was exempt from withholding, but later withheld federal income taxes after being instructed to do so by Revenue Agent Palmer. Burmesch Dep., Tr. 7:14–22.

60. After Mr. Burmesch was assessed a $500 penalty under Section 6682 of the Internal Revenue Code, Mr. Raymond advised him to write "Acceptance Refused for Cause Without Dishonor UCC 3–501 March 18, 1996 sign: Robert M. Burmesch" on the penalty notice. Burmesch Dep., Tr. 37:22 to 38:23, and Exhibit K thereto. Mr. Burmesch also sent the "Constructive Notice, Demand, and Statement" document from the De–Taxing America Program materials to the IRS District Director in Milwaukee, Wisconsin. Burmesch Dep., Tr. 41:13 to 42:9, and Exhibit N thereto. Mr. Burmesch sent a letter to the Director of the Foreign Operations District of the Internal Revenue Service in which he claimed that he was a "non-resident alien," and a separate letter to the IRS District Director in Milwaukee, Wisconsin, where he stated that he was not a "taxpayer," or an "individual" who was required to file a tax return. Burmesch Dep., Tr. 42:10 to 43:6, and Exhibits P and Q thereto. Lastly, Mr. Burmesch also sent two Freedom of Information Act requests to the Internal Revenue Service, and one to the Attorney General of the United States from the De–Taxing America Program. Burmesch Dep., Tr. 43:10 to 45:14, and Exhibits R, S and T thereto.

61. *Thomas C. Casper* is an unemployed worker with a temporary parcel delivery job from Racine, Wisconsin, who purchased the De–Taxing America Program for $1,250 through Robert R. Raymond. Deposition of Thomas C. Casper ("Casper Dep."), Tr. 4:7–12; 6:10–24; 11:19 to 12:16; 13:10 to 15:13; 19:9 to 21:25, under the Eighth Declaration of Teresa Dondlinger Trissell. Mr. Casper sent the "Constructive Notice, Demand, and Statement" document from the De–Taxing America Program materials to the IRS District Director in Milwaukee, Wisconsin. Casper Dep., Tr. 33:11 to 34:17, 35:22 to 36:3, and Exhibit AA thereto. Mr. Casper also sent also sent three Freedom of Information Act requests to the Internal Revenue Service, and one to the Attorney General of the United States from the De–Taxing America Program. Casper Dep., Tr. 36:16 to 39:2, and Exhibits EE, FF, GG and HH thereto. Mr. Casper testified that he had not filed a federal income tax return for the 1995 and 1996 tax years. Casper Dep., Tr. 40:17–22.

62. *Dane E. Charles* is an intrastate commercial driver who lives in Neenah, Wisconsin, and who originally learned about the De–Taxing America Program from Robert R. Raymond. Deposition of Dane E. Charles ("Charles Dep."), Tr. 3:7–16; 4:1–6; 8:4–14, under the Eighth Declaration of Teresa Dondlinger Trissell. Mr. Charles recognized the name "Morningstar Consultants," and associated the defen-

dants, Robert Raymond and Robert Bernhoft, with Morningstar Consultants. Charles Dep., Tr. 5:22 to 6:18. Mr. Charles attended meetings held by Morningstar Consultants at the home of Robert Raymond, and purchased the De–Taxing America Program for $ 1,000 by giving two checks made out to "Bounty Trust" to Robert Raymond. Charles Dep., Tr. 8:22 to 10:12. 11:12 to 12:16, 19:20 to 22:12, and Exhibits 7L and 7M thereto. Mr. Charles testified that he had not filed a federal income tax return (Form 1040) with the Internal Revenue Service for the 1995 and 1996 tax years. Charles Dep., Tr. 14:3–21. When asked why he had not filed a tax return for 1995 and 1996. Mr. Charles answered "Because of the information I've been gathering," which included the De–Taxing America Program. Charles Dep., Tr. 16:22 to 17:5.

Dane Charles made a decision to not file the IRS Form 1040 before ever receiving any "De–Taxing America Program" materials, and never sent any correspondence to the IRS as a result of his purchase of the "De–Taxing America Program". Charles filed an "exempt" Form W–4, but that filing had no relation to the materials he purchased from the defendants.(See June 24, 1997 Depo. of Charles, Tr. 13:1–13, 14:8–17 under the Eighth Declaration of Teresa Dondlinger Trissell).

63. *James F. Ciesielski* is an engineer for the Milwaukee Metropolitan Sewage District who lives in Greenfield, Wisconsin. Deposition of James F. Ciesielski ("Ciesielski Dep."), Tr. 4:7–13; 5:10–12; 8:3–9, under the Ninth Declaration of Teresa Dondlinger Trissell. Mr. Ciesielski is familiar with Morningstar Consultants as "an information firm that provides information on correspondence with various entities of the government." Ciesielski Dep., Tr. 8:24 to 9:5. Mr. Ciesielski dealt with Robert Raymond and Robert Bemhoft on behalf of Morningstar Consultants. Ciesielski Dep., Tr. 9:6–10. Mr. Ciesielski made out a check for $ 1,000 to the "Bounty Trust" in January of 1996. Ciesielski Dep., Tr. 11:14 to 12:8, 14:6 to 15:12, and Exhibit KK thereto. In return, he received three "binders of materials" from Morningstar Consultants which were similar to volumes I and 11 of the De–Taxing America Program materials (Exhibit F to the Deposition of Robert Burmesch). Ciesielski Dep., Tr. 15:15 to 16:16. Mr. Ciesielski testified that Raymond and Bernhoft told him that they believed that individuals are not required to file income tax returns or pay federal taxes. Ciesielski Dep., Tr. 22:2–9.

(In their responses to this particular proposed finding the defendants present that they "told Ciesielski that they believed that 'many' individuals were not required by law to file the IRS Form 1040 Individual Income Tax Return to pay the 26 U.S.C. § 1.1–1 individual income tax, not that all people were not required to file." However, the documentary support which they cite for such distinction in what they allegedly said does not, in fact, support their version of what they said to Ciesielski. In fact the declarations which they cite do not say anything about what they did or did not say to Ciesielski.)

64. On or about July 31, 1996, Mr. Ciesielski sent a document entitled "Constructive Notice, Demand, and Statement" to the District Director of Internal Revenue in Milwaukee, Wisconsin. Ciesielski Dep., Tr. 27:21 to 29:19, and Exhibit OO thereto. He sent a letter to the District Director of Internal Revenue in Milwaukee, Wisconsin, from the materials which he received from Morningstar Consultants in which he stated that "[i]t is my contention that I am not required to file an individual income tax return because I have not been provided with the law that requires me to do so." Ciesielski Dep., Tr. 31:10 to 32:2, and Exhibit PP thereto. He also sent a "Request for Information Under the Privacy Act and the Freedom of Information Act" from the materials he received from Morningstar Consultants to the District Director of Internal Revenue in Milwaukee, Wisconsin. Ciesielski Dep., Tr. 35:2–16, and Exhibit TT thereto.

65. *John W. Dable and Lynn M. Dable* are husband and wife and reside in Milwaukee, where Mr. Dable is a sales manager for Circuit City and Mrs. Dable is a school teacher. Deposition of John W. and Lynn M. Dable ("Dable Dep."), Tr. 4:6–20; 5:9–23; 6:2 to 7:11, under the Eleventh Declaration of Teresa Dondlinger Trissell. Mr. Dable signed checks payable to the "Bounty Trust" for $400 and $500 on January 3, 1996 and December 26, 1995, respectively, at the direction of Robert Raymond. Dable Dep., Tr. 14:13 to 16:24; 17:12–23, and Exhibits FFFF and GGGG thereto. In return for these payments, the Dables received three binders of information from Robert Raymond, which Mr. Dable testified was similar to volumes I and II of the De–Taxing America Program (Exhibit F to the Deposition of Robert Burmesch). Dable Dep., Tr. 21:10 to 22:13; 23:18 to 24:9. Both John and Lynn Dable sent. "Notices to Cease Withholding of FICA Taxes" to their respective employers. Dable Dep., Tr. 28:21 to 33:5, and Exhibit HHHH thereto. Each of the Dables also signed a "Certificate of Exemption from Withholding in Lieu of W–4" which they obtained from the De–Taxing America Program materials. Dable Dep., Tr. 36:12 to 37:3; 40:1 to 41:23, and Exhibits KKKK, LLLL and MMMM thereto.

66. A $500 penalty was subsequently assessed against John W. Dable under Section 6682 of the Internal Revenue Code for filing a false Employee's Withholding Allowance Certificate (Form W–4). Dable Dep., Tr. 42:8 to 43:18, and Exhibit OOOO thereto. The Section 6682 penalty was collected from the Dables' 1996 federal income tax refund. Dable Dep., Tr. 43:2–18. The Dables responded to the penalty assessment by sending a letter dated February 27, 1996 to Revenue Agent Jeffrey Palmer of the Internal Revenue Service, and by mailing a "Final Declaration—Notice of Intention to Levy Refused for Cause Without Dishonor" to the Internal Revenue Service on or about July 2, 1996. Dable Dep., Tr. 41:19 to 45:22; 47:8–14; 48:13 to 50:19, and Exhibits NNNN and OOOO thereto. The Dables also sent the "Constructive Notice, Demand, and Statement" document to the IRS District Director in Milwaukee, Wisconsin, and made three separate requests for information under the Freedom of Information Act to the Internal Revenue Service. Dable Dep., Tr. 50:20 to 51:12; 59:11–22, and Exhibits RRRR, SSSS, and XXY–X thereto.

67. *Gary Neil Dailey.* Mr. Dailey paid a total of $1,000 to the "Bounty Trust" by checks dated December 8, 1995 and December 23, 1995. Deposition of Gary N. Dailey ("Dailey Dep."), Tr. 13:11 to 16:6, and Exhibits XX and ZZ. Dailey send a "Notice to Cease Withholding of FICA Taxes" to his employer, Weldall Manufacturing, Inc., as well as a "Certificate of Exemption from Withholding in Lieu of W–4." Dailey Dep., Tr. 20:9 to 24:1, and Exhibits BBB and CCC thereto. By letter dated August 5, 1996, Mr. Dailey protested the action taken by the Internal Revenue Service to instruct his employer to resume withholding federal income taxes from his wages. Included in this correspondence was a copy of the IRS Notice of Penalty Charge dated March 25, 1996, reflecting the assessment of a $500 penalty under Section 6682 of the Internal Revenue Code. Dailey Dep., Exhibit EEE.

68. Mr. Dailey was also assessed a $500 civil penalty under Section 6702 of the Internal Revenue Code for filing a frivolous tax return, i.e., a U.S. Individual Income Tax Return (Form 1040) which stated that the $50,205 which he earned from Weldall Manufacturing, Inc., (as evidenced by the attached Form W–2 Wage and Tax Statement) was "non-taxable compensation," and requested that the $4,337 in federal income taxes withheld from his wages be refunded to him. Dailey Dep., Exhibit GGG, MMM. Mr. Dailey also filed an amended U.S. Individual Income Tax Return (Form 1040X) with the IRS for the 1992 taxable year in which the total income and tax were given as "0." Dailey Dep., Exhibit NNN.

### E. Defendants' response to the IRS investigation into the De–Taxing America Program

69. On November 15, 1996, Revenue Agent Palmer wrote letters to Robert R. Raymond and Robert G. Bernhoft to advise them that the Internal Revenue Service had completed its preliminary investigation into the De–Taxing America Program, and that the Internal Revenue Service had concluded that penalties, an injunction proceeding, and/or the issuance of pre-filing notification letters to the purchasers of the De–Taxing America Program may be appropriate. Third Palmer Decl., ¶ 43.

70. Mr. Raymond and Mr. Bernhoft were invited to attend a meeting with Revenue Agent Palmer and Revenue Agent Michael Gibson in order to provide the Internal Revenue—Service with facts or legal arguments as to why the proposed actions described above should not be taken. True and correct copies of these November 15, 1996 letters, and the responses received from Robert R. Raymond and Robert G. Bernhoft (their "Affidavits Refusing to Accept the Request for a Meeting to Give Testimony for Cause Without Dishonor") are attached to the Third Declaration of Jeffrey Palmer as Exhibits 7, 8, 9 and 10. Third Palmer Decl., ¶ 43.

71. Based upon his examination of the "De–Taxing America" package and promotion, Revenue Agent Palmer concluded that the "De–Taxing America" package and promotion constitutes an abusive tax shelter within the meaning of Section 6700 of the Internal Revenue Code (26 U.S.C.), and accordingly recommended that a civil action be filed to obtain an injunction prohibiting Robert R. Raymond and Robert G. Bernhoft from continuing to sell the "De–Taxing America" package and promotion. Palmer Decl., ¶ 23.

## IV. ANALYSIS

### A. SUMMARY JUDGMENT

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.

The purpose of summary judgment is to "pierce the pleading and to assess the proof in order to see whether there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The standard governing summary judgment is clear: if no rational jury could, on the evidence presented in the summary judgment proceeding, bring in a verdict for the party opposing summary judgment ... then summary judgment must be granted." *Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 846 (7th Cir.1996).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. "To state it differently, a party will be successful in opposing a summary judgment motion only when they present definite, competent evidence to rebut the motion." *Smith on Behalf of Smith v. Severn*, 129 F.3d 419, 426 (7th Cir.1997).

The court must review the record and "extract all reasonable inferences from it in the light most favorable to the nonmoving party." *Potts v. City of Lafayette, Ind.*, 121 F.3d 1106, 1110 (7th Cir.1997). However, neither "the mere existence of

some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), nor the demonstration of "some metaphysical doubt as to the material facts," *Matsushita Elec.*, 475 U.S. at 586, 106 S.Ct. 1348, will sufficiently demonstrate a genuine issue of material fact.

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## B. THE INTERPLAY BETWEEN THE VARIOUS STATUTES THAT ARE INVOLVED IN THE PLAINTIFF'S PRAYER FOR RELIEF

Section 7408(a) of the Internal Revenue Code provides that the United States may commence an action in a district court to enjoin any person from engaging in conduct subject to penalty under Sections 6700 and 6701 of the Code. A district court has authority to grant such relief, if it finds: "(1) that the person has engaged in any conduct subject to penalty under section 6700... or section 6701..., and (2) that injunctive relief is appropriate to prevent recurrence of such conduct..." 26 U.S.C. § 7408(b).

In turn, 26 U.S.C. § 6700 provides a penalty for false or fraudulent statements by those who organize, promote or sell "a partnership or other entity", "an investment plan or arrangement", or "any other plan or arrangement." Any person who makes or furnishes a statement about the tax consequences of participating in such plan or arrangement which he knows, or has reason to know, is false or fraudulent has engaged in conduct subject to a monetary penalty under Section 6700(a)(2)(A). *United States v. White*, 769 F.2d 511, 514–15 (8th Cir.1985); *United States v. Buttorff*, 761 F.2d 1056, 1059–63 (5th Cir. 1985).

Thus, in order for its motion for summary judgment to be granted and for the prayed for injunction to be entered, the United States must show that there are no material issues of fact in dispute and that (1) the defendants engaged in conduct subject to penalty under Section 6700 by making false and fraudulent statements about the federal tax laws which they knew or should have known to be false and (2) that injunctive relief is warranted to prevent such conduct from continuing.

The United States bears the burden of proving each element of a violation of Section 6700 necessary for the issuance of an injunction under Section 7408 by a preponderance of the evidence. *United States v. H & L Schwartz, Inc.*, 1987 WL 45223, *6 (C.D.Cal.1987). The United States is required to show:

(1) That the defendants in this case have organized or sold (or assisted in the organization or sale of) an entity, plan or arrangement;

(2) That the defendants made or furnished statements concerning tax benefits to be derived from the entity, plan or arrangement;

(3) That the defendants knew, or had reason to know, the statements were false or fraudulent; and

(4) That the false or fraudulent statements pertained to a material matter.

*United States v. Campbell*, 897 F.2d 1317, 1320 (5th Cir.1990); *United States v. Kaun*, 827 F.2d 1144, 1149 (7th Cir.1987) ("Under § 6700, the government must prove that the defendant was involved in an ' abusive tax shelter': that is, any entity whose principal purpose is the avoidance or evasion of federal income tax.").

Additionally, in support of its claim for relief the United States relies on Section 7402(a) of the Internal Revenue Code, 26 U.S.C. § 7402(a). That section gives district courts "jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other or-

ders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." It was intended to provide the district courts with a full range of powerful tools to ensure the enforcement of both the spirit and the letter of the internal revenue laws. *Brody v. United States*, 243 F.2d 378, 384 (1st Cir.), *cert. denied*, 354 U.S. 923, 77 S.Ct. 1384, 1 L.Ed.2d 1438 (1957), "[i]t would be difficult to find language more clearly manifesting a congressional intention to provide the district court with a full arsenal of powers to compel compliance under the internal revenue laws." Thus, injunctions have been issued pursuant to Section 7402(a) to enjoin an individual's harassment of Internal Revenue agents, *United States v. Ekblad*, 732 F.2d 562 (7th Cir.1984), to enjoin the promotion and sale of tax evasion trust plans, *United States v. Landsberger*, 692 F.2d 501 (8th Cir.1982), and to enjoin the dissemination of tax protester materials encouraging taxpayers to file improper tax returns. *United States v. Shugarman*, 596 F.Supp. 186 (E.D.Va.1984); *United States v. May*, 555 F.Supp. 1008 (E.D.Mich.1983).

### C. THIS ACTION FOR INJUNCTIVE RELIEF UNDER SECTION 7408 OF THE INTERNAL REVENUE CODE WAS PROPERLY COMMENCED

On April 14, 1997, the defendants filed motions to dismiss this case based on lack of subject matter jurisdiction. One of the grounds for defendants' motions was that proper authorization from the Secretary of the Treasury to commence this litigation had not been obtained. Specifically, the defendants argued that the action was being pursued pursuant to the provisions of 26 U.S.C. § 7401 which provides that: "[n]o civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." In rejecting the defendants' arguments, I determined that the relief sought by the plaintiff was injunctive, and that the action was not one brought for the collection or recovery of taxes, or of any fine, penalty, or forfeiture. Thus, only Section 7408 authorization was necessary for the action to have been properly commenced. Section 7408 provides that: "[a] civil action in the name of the United States to enjoin any person from further engaging in conduct subject to penalty under section 6700 . . . or section 6701 . . . may be commenced at the request of the Secretary." And because I found that proper authorization under section 7408 had been obtained, I recommended that the defendants' motion to dismiss be denied. That recommendation was adopted by the district judge.

The record is clear that the present civil action for an injunction was brought at the request of a proper delegate of the Secretary of the Treasury. The Declaration of Edward G. Langer establishes that the Chief Counsel of the Internal Revenue Service (through his delegate, Assistant Counsel Attorney Langer) authorized and requested the Attorney General to bring an and action for an injunction against the defendants by letter dated January 28, 1997. This January 28, 1997 letter was addressed to Assistant Attorney General Loretta C. Argrett of the Tax Division, a delegate of the Attorney General of the United States.

In any event, this particular issue has been decided against the defendants. It is the "law of the case". *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir.1986) ("[w]e shall not reexamine our original decision, but shall follow it as having established the law of the case.") And, as the plaintiff observes in its brief, it would be impossible for a court to perform its duties satisfactorily, efficiently and expeditiously if a question, once considered and decided, were to be litigated again and again in the same case. *Creek v. Village of Westhaven*, 144 F.3d 441, 446 (7th Cir.1998).

Thus, to the extent that the defendants combat the plaintiff's motion for summary

judgment on the grounds that this lawsuit was not properly authorized, such argument must be rejected.

### D. THE "DE–TAXING AMERICA PROGRAM" IS AN ABUSIVE TAX SHELTER WITHIN THE MEANING OF SECTION 6700, THEREBY MAKING ITS FURTHER SALES SUBJECT TO BEING ENJOINED UNDER SECTION 7408 OF THE INTERNAL REVENUE CODE

The defendants argue that the " De–Taxing America Program" is not a plan, arrangement, or entity. Rather, it is a collection of educational information regarding the scope and nature of federal income taxation. (Defendants' Opposition Brief, p. 36). Thus, it cannot be an abusive tax shelter captured within the snares of Section 6700. I disagree.

■ Clearly, in light of the Seventh Circuit's decision in Kaun the "De–Taxing America Program" is an abusive tax shelter. In Kaun, the defendant was the unofficial leader of a tax protester group known as the Wisconsin Society for Educated Citizens ("WSEC"). The WSEC held weekly meetings, with a usual attendance of 60 to 75 people. The most popular topic of discussion among the regular WSEC membership was the corruption of the internal revenue system, and the ways in which taxpayers could obstruct the workings of the Internal Revenue Service. For example, Kaun encouraged WSEC members to send as many Freedom of Information Act requests as possible, in order to "bog down" the IRS. Kaun also discussed requesting injunctions against employers to prevent then from requiring their employees to fill out W–4 forms. The WSEC also sponsored a videotape presentation on the subject of filing common law liens against IRS personnel. Indeed, among the main evidence against Kaun were forms printed on the WSEC word processor, as well as various pamphlets and information kits that were offered at each meeting. These information kits included among their contents numerous form letters, sample certificates, and suggested pleadings designed to be used, among other things, for initiating Privacy Act and Freedom of Information Act requests, petitioning for termination of social security numbers, requesting tax refunds, terminating wage and salary withholdings, and seeking tax information from the Internal Revenue Service. Notably, the district court in its decision observed that "[a]mong the numerous misleading, if not simply fraudulent, representations advanced in these materials are that wages are not income, that filing a federal income tax return is purely voluntary and not required by law, that individuals can lawfully revoke their social security numbers,...and that individuals may claim complete exemption from income taxation on the ground that withholding is voluntary." *United States v. Kaun*, 633 F.Supp. 406, 416 (E.D.Wis.1986).

For the defendants to argue, in the face of Kaun, that the "De–Taxing America Program" is not an "abusive tax shelter" is ludicrous. Of course it is an "abusive tax shelter". The "Program" consisted of three volumes. Volume I of the Program instructs (indeed, at the very top of the second page of Volume I, large tab 3, is found the word "INSTRUCTIONS") the purchaser to send pre-printed and personalized "documents" to various officials of the United States Government, including: (1) the Attorney General of the United States; (2) officers and employees of the Internal Revenue Service; and (3) the Director of Central Operations for the Social Security Administration. The stated purpose of Document 1 (as set forth in the accompanying "instructions") is "to determine whether or not the Internal Revenue Service considers you to be a taxpayer." Addressed to the Attorney General, Document 1 itself requests that the purchaser of the "De–Taxing America Program" package be provided with information that includes "[a] copy of the foundation instrument, signed by the agent of the Internal Revenue Service, which was used as the sworn affidavit of probable cause to identify us as citizens of the United States sub-

ject to the jurisdiction of United States Corporate Government" and "[a] copy of the instrument under Title 26, section 6331 which shows that we are the officers, employees, or elected officials whose wages and/or salaries could be levied without a court order..."

Document 2 of the Program, also addressed to the Attorney General, states that "we suspect that there is no such law" making the purchaser of the Program liable to file an individual income tax return. This "document" goes on to state that:

Therefore, if you or whoever answers this letter do not furnish us with the law we are requesting within thirty days of receiving this letter, we are going to assume that there is no such law and use the return receipt to create a record of our inquiry in the event that we ever need to defend ourselves.

As part of our research we have learned that the IRS Code is merely Prima Facie law. We have also learned that the 16th Amendment taxes income and that what we earn from our labor is not income. So we would ask that you do not quote these.

Similar false and erroneous statements are contained in subsequent letters addressed to Internal Revenue Service and Social Security Administration officials. For example, document 3 of the Program materials, which is addressed to the Director of Foreign Operations District of the Internal Revenue Service, states, in pertinent part, that:

If you will not or do not provide us with the law which makes us liable to file an individual income tax return within 30 days of receiving this letter, you may rest assured that we will be applying for full refund of all of the taxes we have ever paid to the federal United States Government. Failure to respond to our request in 30 days will also lead us to conclude that there is no such law and to use the return receipt to create a record of our inquiry in the event that we ever need to defend ourselves.

Other "documents" contained in the Program instruct the purchasers to represent that they are "non-resident aliens" and therefore exempted from the requirement to file tax returns (Document 7); that they are not "taxpayers" who are required to a file tax return (Document 8); and that they are "sovereigns" who are not required to file tax returns or pay federal taxes (Document 9, entitled "Constructive Notice, Demand, and Statement"). Document 15 of the Program, entitled " Demand for MFR–01 Status (1040 Not Required)," is addressed to and informs the District Director of Internal Revenue that the purchaser has "canceled my election to file and pay federal income taxes." The "Special Legal Administrative Evidentiary Instrument" contained in the Program materials (as Document 20) represents that the "Instrument" is "prima facie evidence that the Declarants are not required nor do they have any legal or lawful duty to file and/or make a Form 1040–U.S. Individual Income Tax Return..."

Purchasers of the Program are instructed to send Document 9, entitled "Constructive Notice, Demand and Statement," to the District Director of Internal Revenue to notify the Internal Revenue Service that they are no longer required to file federal income tax returns or pay federal income taxes. This "Constructive Notice, Demand and Statement" advises the Internal Revenue Service of the purchaser's "status as sovereigns under the U.S. Constitution (see 2:1:5), that is, 'non-taxpayers' under the law...'" Document 9 proceeds to emphasize that "Evidently there are no published orders from the Secretary of the Treasury giving the Commissioner of Internal Revenue the requisite authority to enforce Title 26, the Internal Revenue Code, within the 50 states of the Union."

It is abundantly clear that the aforedescribed statements are false and baseless. Statements like them have been repeatedly rejected by the courts. See *Peth v. Breitzmann*, 611 F.Supp. 50 (E.D.Wis. 1985) (collecting and rejecting various tax

protester-type arguments regarding the validity of the internal revenue laws). That Congress has authority only over the District of Columbia and the federal possessions and territories and that therefore it may not tax citizens of the 50 states is an assertion that is nothing short of frivolous. See *United States v. Nelson (In re Becraft)*, 885 F.2d 547, 548 n. 2 (9th Cir. 1989); *Coleman v. Commissioner*, 791 F.2d 68, 70 (7th Cir.1986) (argument that "private citizens" are exempt from taxation is a tired one); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir.1993) (rejecting as "simply wrong" the claim that, as a citizen of the "Indiana State Republic," a taxpayer was outside the jurisdiction of United States); *United States v. Sloan*, 939 F.2d 499, 501 (7th Cir.1991) ("Mr. Sloan's proposition that he is not subject to the jurisdiction of United States [because he is a free born, natural citizen of Indiana] is simply wrong"); *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (taxpayer's contention that he is not subject to federal tax laws because he is a citizen of the sovereign state of Idaho is "patently frivolous"). Also incorrect, indeed frivolous, are any assertions in the Program documents that the only wages which may be taxed are those paid by the United States in its capacity as employer. *Lovell v. United States*, 755 F.2d 517, 519 (7th Cir.1984); *Granzow v. Commissioner*, 739 F.2d 265, 267 & n. 1 (7th Cir.1984).

Moreover, the above-described false statements found in the Program are material. A matter is considered material " if it would have a substantial impact on the decision-making process of a reasonably prudent investor." S.Rep. No. 97–494, 97th Cong.2d Sess. at 267 (1982 U.S.Code Cong. & Ad. News 781, 1014). The false representations contained in the Program are "material" because "[t]he taxpayers who have been or are now being audited by the IRS or are involved in litigation because they relied upon [the representations as set forth in the De–Taxing America Program] should certainly have been informed about their complete lack of merit". *United States v. White*, 769 F.2d 511, 515 (8th Cir.1985). More specifically, those purchasers of the Program who, for example, submitted Forms W–4 to their employers which falsely claimed that the purchasers were exempt from the requirements to withhold federal income taxes from their wages or salaries (and who ultimately had penalties assessed against them for such actions) should certainly have been told that the Program's instructions on how they should do so were baseless and bound to cause them to be subjected to such penalties.

The bottom line is that, just as what the defendant was "hawking" in Kaun was an abusive tax shelter and therefore ran afoul of Section 6700 of the Internal Revenue Code, 26 U.S.C. § 6700, so too, the "De–Taxing America Program" is an abusive tax shelter. Whether the defendants' involvement in the distribution of the Program is sufficient to warrant a finding, at this stage of the proceedings, that they violated Section 6700 of the Internal Revenue Code, and therefore may properly have an injunction entered against them pursuant to 26 U.S.C. § 7408, is the next question to be addressed.

### E. THE DEFENDANTS' INVOLVEMENT IN THE. DISTRIBUTION OF THE "DE–TAXING AMERICA PROGRAM" SUBJECTS THEM TO THE PROVISIONS OF SECTION 6700.

The defendants argue that the "plaintiff can point to no testimony from the 24 alleged purchasers of the ["De–Taxing America Program"] it deposed that defendants made *any* statements whatsoever regarding any alleged tax benefit from purchasing the [Program] information...In fact, defendants made no such statements...In the face of this simple and unambiguous fact, plaintiff disingenuously asserts that it is the [De–Taxing America Program] *itself* that constitutes the statutorily-required false statements...This desperate assertion is wholly unsupported by the case law, and does significant violence to plain language principles and common sense. Therefore, be-

cause a reasonable factfinder could find on this record that defendants made no external false statements regarding any alleged tax benefit of purchasing the [Program], this disputed material fact precludes summary judgment."

■ The defendants are wrong. First of all, in order for one to be held liable for his actions under Section 6700, all that is required is that he assist in the organization of any plan or arrangement, or participate directly or indirectly in the sale of any interest in an entity, plan or arrangement, and make or furnish "a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of... participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter."

The undisputed material facts clearly demonstrate that the defendants participated directly in the sale of the Program. Indeed, in their most recent declarations (which, at the defendants' request, were not stricken), they have admitted that they sold the Program to 32 individuals. And, as noted by the plaintiff in its reply brief, these evidentiary admissions are corroborated by the testimony of the purchasers of the Program whose depositions appear under the Sixth through the Twenty–Fifth Declarations of Teresa Dondingler Trissell, and the documentary evidence of record adduced in support of plaintiff's motion for summary judgment.

The foregoing materials demonstrate that Raymond and Bernhoft, doing business as "Morningstar Consultants", advertised in an Ozaukee County newspaper that "[t]he Internal Revenue Service has no Statutory Authority to: Compel you to File a Tax Return, Require withholding from your paycheck, Levy or Lien your property [and/or] Audit your Books & Records." Purchasers of the Program paid between $445 and $2,600 for their copies of the Program, usually by checks made out to the "Bounty Trust" at the direction of Raymond, who frequently collected the checks on behalf of Morningstar Consultants. A number of documents (as well as the purchasers of the Program) identified Raymond and Bernhoft as being associated with Morningstar Consultants, and the records obtained by the Internal Revenue Service through the service of an administrative summons on the Ozaukee Bank show that Raymond and Bernhoft were, respectively, the "managing director" and a trustee of the Bounty Trust.

But, the defendants argue that the plaintiff has failed to show that either or both of them made any statements whatsoever, external to the Program itself, regarding any alleged tax benefit from purchasing the Program. Such being the case, the defendants argue that the plaintiff has failed to meet its burden of proof. I disagree.

As stated previously, certain "statements" in the Program were false. And these false statements related to "the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of... participating in the plan or arrangement..." 26 U.S.C. § 6700(a)(2)(A). For instance, the Program's representations that wages are not income, and that there is no legal obligation to file income tax returns or pay federal income taxes are material false statements that clearly come within the broad scope of Section 6700(a)(2)(A). Even assuming, arguendo, that the defendants made no statements "external" to the Program, such would not insulate them from the provisions of Section 6700. This is because the explicit language of that section makes subject to penalty any person who "makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)" the prohibited statements. And, at a minimum, what the defendants here did was furnish false statements to the purchasers of the Program by the very act of selling them the Program.

Finally, I am persuaded that the defendants knew or had reason to know that the afore-described statements were false or

fraudulent as to a material matter. To begin with, both of the defendants are intelligent individuals. Indeed, Bernhoft is a third-year law student at the University of Wisconsin Law School. To be sure, he may not have been a law student at the time he was selling of the Program. That he is currently that far in his legal education, however, speaks volumes regarding his intelligence and his degree of literacy. And Raymond is no intellectual slouch either. According to his declarations (which are all extremely well crafted), he is in the roofing business and has been engaged in that business for the last 19 years. He has also run for public office (although unsuccessfully). In the Fall of 1998 he ran for U.S. Senate on the U.S. Taxpayers Party ticket. He also serves on that political party's Platform Committee at the national and state level, and represented the U.S. Taxpayers Party of Wisconsin at the Seattle national convention in March, 1999. In sum, each of these defendants knew, or should have known, that the Program they were selling contained false statements, the nature of which are described above. At a minimum, each of them knew or should have known, that in Kaun the Seventh Circuit Court of Appeals had found to be false virtually the same sorts of statements as the defendants here furnished to the purchasers of the "De–Taxing America Program".

In conclusion, I am persuaded that the defendants, and each of them, engaged in conduct subject to penalty under Section 6700 of the Internal Revenue Code. Thus, an injunction pursuant to the provisions of Section 7408 of the Code, 26 U.S.C. § 7408, is to be entered if "injunctive relief is appropriate to prevent recurrence of such conduct."

## F. THE ENTRY OF AN INJUNCTION UNDER SECTION 7408 OF THE INTERNAL REVENUE CODE IS APPROPRIATE TO PREVENT RECURRENCE OF THE DEFENDANTS' CONDUCT

When a defendant is found to have engaged in conduct subject to penalty under Section 6700, injunctive relief is available under Section 7408(a) if such relief "is appropriate to prevent recurrence of such conduct." In making this determination, the traditional equity requirements need not be met. *United States v. White*, 769 F.2d at 515; *United States v. Buttorff*, 761 F.2d at 1059 ("When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose.") In providing a specific injunctive remedy under Section 7408 for conduct violating Section 6700, Congress has already taken the traditional equity factors into consideration. See *United States v. Buttorff*, 563 F.Supp. 450, 455 (N.D.Tex.1983).

In Kaun the Seventh Circuit looked to the analogous area of securities law to identify a number of factors pertinent to determining whether the granting of injunction under Section 7408 is appropriate. Relevant factors include:

> [T]he gravity of the harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the isolated or recurrent nature of his infraction and the likelihood that the defendant's customary business activities might again involve him in such transaction; the defendant's recognition of his own culpability; and the sincerity of his assurances against future violations.

*United States v. Kaun*, 827 F.2d at 1149.

In an effort to avoid the entry of an injunction against them, the defendants each presented declarations in which they state, among other things, that they will not sell the materials referred to in the pleadings, filings, and records of this case as the "De–Taxing America Program", at any time in the future. Nor will they sell any materials substantially similar to the materials referred to in the pleadings, files and records of this case as the "De–Taxing America Program", however denominated, at any time in the future. (Fourth Decla-

ration of Raymond, paragraphs 8 and 9; Third Declaration of Bernhoft, paragraphs 8 and 9). The defendants may be most sincere when they express their future intentions. But, even assuming they are sincere, that does not mean that the court should refrain from entering an injunction.

The fact remains that the United States, as a result of the defendants' sales of the Program, has suffered a loss of tax revenues as a result of the failure of several purchasers of the Program to file federal income tax returns for the 1995, 1996 and/or 1997 taxable years. (Proposed Findings of Fact, No. 38). Based upon the income reported by some of these individuals on the income tax returns which they had previously filed with the Internal Revenue Service, as well as income actually received by some of these individuals (as reported to the Internal Revenue Service) and Bureau of Labor statistics, it is estimated that the United States has suffered a loss of federal income tax revenue in the amount of $691,731.00 as a result of the failure of some of those purchasers to file federal income tax returns. (Proposed Findings of Fact, No. 39). To be sure, the defendants question the accuracy of the amount of lost revenue, observing that the plaintiff previously asserted that United States lost over $1.5 million as a result of the defendants' conduct. Regardless of which figure is accurate, there has nevertheless been a substantial loss of tax revenue as a result of the defendants' conduct.

Moreover, the defendants' conduct has contributed to the need for the United States, through the Internal Revenue Service, to incur considerable administrative expense in undertaking taxpayer delinquency investigations by attempting to contact the delinquent taxpayers and secure the unfiled federal income tax returns. Indeed, it has also caused the United States to incur administrative expense in dealing with inappropriately filed amended federal income tax returns which request refunds of all or a portion of the federal income taxes paid by the taxpayer for certain taxable years. For example, on February 12, 1996, a Treasury check in the amount of $2,138.60 was issued to Mr. and Mrs. Deiss, representing the requested 1992 tax refund of $1,744 plus statutory interest. When the Internal Revenue Service subsequently notified Mr. and Mrs. Deiss that the refund of $2,138.60 for his 1992 federal income tax liability was erroneous, Mr. Deiss wrote " Acceptance Refused for Cause Without Dishonor" "UCC 3–501" across the notice of erroneous refund on May 29, 1996, and returned it to the Internal Revenue Service.

In the end, the defendants' conduct has contributed to the need for the United States, through the Internal Revenue Service and its employees, to expend hundreds of man-hours in performing such functions as:

(a) auditing the federal income tax liability of purchasers of the De–Taxing America Program;

(b) preparing substitutes for return (SFRs) for purchasers of the De–Taxing America Program who failed to file income tax returns with the Internal Revenue Service for the 1995–1997 taxable years;

(c) preparing, reviewing and issuing statutory notices of deficiency to purchasers of the De–Taxing America Program;

(d) responding to Forms W–4 the filed by purchasers of the De–Taxing America Program who claimed that they were exempt from the federal withholding requirements, including proposing and assessing Section 6682 civil penalties;

(e) responding to Freedom of Information Act (FOIA) and Privacy Act requests sent to the Internal Revenue Service by purchasers of the De–Taxing America Program;

(f) issuing pre-filing notification and warning letters to purchasers of the De–Taxing America Program; and

(g) collecting delinquent federal income taxes and statutory additions to tax from

purchasers of the De–Taxing America Program.

(Proposed Findings of Fact, No.56)

Just as significantly, neither of the defendants has expressed in their respective declarations any acknowledgment that the steps they took in selling the Program ran afoul of any law, which for reasons previously stated, it did. Instead, they state:

I stopped selling the information referred to in the pleadings, filings, and records of this case as the "De–Taxing America Program" over a year prior to filing of this action, well before I became aware that the Internal Revenue Service was investigating me, both criminally and civilly. My primary purpose in selling the materials was educative respecting things political and religious which I believed, and still believe, to be true. In particular, I intended that selling the information de-nominated the "De–Taxing America program" would further a spiritual and political awakening, such that political and legal reformation of corrupt political institutions could begin. I observed, however, after selling the information to approximately 32 people, that this goal would not the best served by further sales of the information, but by more concentrated and vigorous political and legal organizing and activism.

(Fourth Declaration of Raymond, paragraph 14; Third Declaration of Bernhoft, paragraph 14)

 There is nothing in the defendants' respective declarations that gives the court any confidence that these defendants will not change their mind in the future and decide that, contrary to their earlier belief, their laudable goal of reforming corrupt political institutions could be best served by further sales of the "De–Taxing America Program". Simply stated, the defendants' admitted conduct, despite their professed lofty motive, has been profoundly disruptive to the functioning of the Internal Revenue Service and there is no reason to believe that they would not engage in such conduct again if they felt it would serve their purpose. In the exercise of its sound discretion, this court unhesitatingly opines that an injunction is appropriate in this case to prevent the recurrence by the defendants of conduct which the record shows them to have committed with respect to their promoting and selling the "De–Taxing America Program".

## V. CONCLUSION

In conclusion, and for all of the foregoing reasons, I **RECOMMEND** that the Plaintiff's motion for summary judgment be **GRANTED;** I further **RECOMMEND** that the plaintiff's petition for permanent injunctive relief against the defendants be **GRANTED** and that the district judge execute the "Plaintiff's Proposed Form of Injunction" which has been filed with the court.

**NOW THEREFORE IT IS ORDERED** that the plaintiffs' motion to strike the select portions of defendants' declarations be and hereby is **DENIED;**

**IT IS FURTHER ORDERED** that plaintiffs' motion for leave to exceed the page limitation of Local Rule 6.01(c) nunc pro tunc be and hereby is **GRANTED;**

**IT IS FURTHER ORDERED** that defendants' motion to strike plaintiffs' reply brief be and hereby is **DENIED;**

**IT IS RECOMMENDED** that plaintiffs' motion for summary judgment be **GRANTED;**

**IT IS FURTHER RECOMMENDED** that plaintiffs' petition for permanent injunctive relief against the defendants be **GRANTED** and that the district judge execute the "Plaintiff's Proposed Form of Injunction" which has been filed with the court.

Any objection to this Order and Recommendation must be filed with the Clerk of Court, in duplicate, within ten days of service of the same. See 28 U.S.C. § 636(b)(1)(A), (B) and (C) and Local Rule 13 (E.D.Wis.). Failure to file a timely

objection shall result in a waiver of your right to appeal all factual and legal issues.

June 17, 1999.

## JUDGMENT IN A CIVIL CASE

This action came before the court. The issues have been decided and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that this case is dismissed with prejudice.

**IT IS FURTHER ORDERED** that the defendants, Robert R. Raymond and Robert G. Bernhoft, both individually and doing business as Morningstar Consultants, and defendants' agents, servants, employees, attorneys, and all those in active concert or participation with them, pursuant to Fed.R.Civ.P. 65, are hereby **ENJOINED,** directly or indirectly from engaging or undertaking to engage in any and all of the following activities:

1. Inciting other individuals and entities to understate their federal tax liabilities, avoid the filing of federal tax returns, or avoid paying federal taxes based upon (a) the false representation that wages, salaries, or other compensation for labor or services are exempt from federal income taxation, or (b) any other such frivolous claim with respect to the scope of federal income taxation, or (c) any false or fraudulent claim regarding the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit for federal income tax purposes;

2. Advertising, marketing, or selling any documents or other information advising taxpayers that wages, salaries, or other income not specifically excluded from taxation under Title 26 of the United States Code are not taxable income;

3. Providing forms for or assisting any individual in the preparation of false Internal Revenue Forms W–4, W4E, 1040X, and any other form, return, or declaration claiming that the taxpayer is exempt from federal income taxation or entitled to excessive withholding allowances;

4. Filing, providing forms for, or otherwise aiding and abetting the filing of frivolous Freedom of Information requests with the Internal Revenue Service; and

5. Engaging in any other conduct subject to penalty under Section 6700 of the Internal Revenue Code, Title 26 of the United States Code.